IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CORNELIUS JEFFERSON,					No. 3:20-cv-01314-HZ

           Plaintiff,				OPINION & ORDER

   v.

FEDERAL EXPRESS CORPORATION

           Defendant.

Aaron W. Baker
Serena Liss
BAKER LAW PC
1 SW Columbia Street, Suite 1850
Portland, OR 97258

     Attorneys for Plaintiff

Brian K. Coleman
Christopher M. Ahearn
Gabriel Paul McGaha
Joseph Reafsnyder
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Building B
Memphis, TN 38125

Michael G. McClory


1 – OPINION & ORDER

CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Cornelius Jefferson brings this unlawful employment practices action against his former employer, Defendant Federal Express Corporation, under both federal and state law. Plaintiff alleges that Defendant and its managers discriminated and retaliated against Plaintiff based on his race, which resulted in Plaintiff's constructive discharge. Defendant now moves for summary judgment, arguing that (1) all Plaintiff's claims are barred by a six-month contractual limitations period set forth in Plaintiff's employment agreement and (2) Plaintiff has failed to demonstrate a prima facie case for (a) discrimination under 42 U.S.C. § 1981, (b) hostile work environment under 42 U.S.C. § 1981, and (c) retaliation under 42 U.S.C. § 1981 and Or. Rev. Stat. § ("O.R.S.") 659A.199. For the reasons discussed below, the Court grants Defendant's Motion for Summary Judgment and dismisses this case with prejudice.[1]

## BACKGROUND

    Plaintiff began working for Defendant as a part-time material handler in 2018. Pl. Dep. 30:22-24, ECF 28-1; Liss Decl. Ex. 2 at 1, ECF 33-2. In April 2019, Plaintiff bid on and received an offer for a full-time courier position. Liss Decl. Ex. 2 at 8; Liss Decl. Ex. 4 ("Hanssen Dep.") 13:1-8, ECF 33-4. The offer was "contingent upon successful completion of the FedEx Express hiring process," and Plaintiff was "required to successfully complete all aspects of the FedEx Express hiring process," or the "offer w[ould] be rescinded." Liss Decl. Ex. 2 at 8.

---

[1] *See Felix v. Guardsmark, LLC*, No. 3:13-cv-00447-BR, 2014 WL 657177 *1, *9 (D. Or. 2014) (dismissing employment discrimination and retaliation claims with prejudice for being time barred under an employment agreement's contractual limitations provision).

As part of the hiring process, Defendant provided Plaintiff with an employment agreement.[2] Liss Decl. Ex. 2 at 10. The employment agreement was a two-and-a-half page, single-spaced document. Liss Decl. Ex. 2 at 11-13. The agreement did not contain headings and had thirteen paragraphs. *Id.* The third paragraph, located on the first page in all uppercase letters, contained a six-month limitation provision for employees seeking to bring suit against Defendant:

> (3) To the extent the law allows an employee to bring legal action against the company or any manager employed by the company and acting in his or her managerial capacity, I agree to bring any claim within the time provided by law or no later than six (6) months from the date of the event forming the basis of my claim, whichever expires first. I realize and acknowledge that I am agreeing to bring any claim I may have within a shorter time than may otherwise be provided by law.

Liss Decl. Ex. 2 at 11.

Plaintiff digitally acknowledged the employment agreement on April 29, 2019, by checking a box stating that, "[b]y checking this box and selection 'OK' below, I understand that this electronic signature serves as my acceptance of the terms and conditions of the Employment Agreement presented." Liss Decl. Ex. 2 at 7. The text of the employment agreement does not appear on the page where the employee checks the acknowledgment box; the employment agreement is only accessed by clicking on a hyperlink. Liss Decl. Ex. 2 at 5-7, 10.

Plaintiff, who is a Black man, alleges that he experienced various forms of racial discrimination while he worked at the Portland FedEx station. Pl. Dep. 76:1-3; Liss. Decl. Ex. 2 at 8. In June 2019, an employee told Plaintiff that coworkers were calling him "Black CJ." Pl. Dep. 84:14-25. On June 8, Plaintiff called Defendant's toll-free alert line to anonymously report that he was being called Black CJ. Pl. Dep. 84:3-7; Liss Decl. Ex. 5 ("Kim Dep.") Kim Dep.

---

[2] Plaintiff also executed an initial employment agreement for his first part-time position. Liss Decl. Ex. 2 at 6.

9:22-23, 33:17-25, 34:15-17, ECF 33-5. Karla Kim, a human resources (HR) advisor, opened an internal Equal Employment Opportunity (EEO) investigation based on the call and contacted Plaintiff. Kim Dep. 35:9-12. Plaintiff admitted that he had never heard anyone call him Black CJ, and he refused to provide Kim with the names of current employees involved in the Black CJ comments. Pl. Dep. at 71:23-25; Kim Dep. 36:13-19; Pl. Dep. 84:11-13. Because Plaintiff did not provide any names of employees to corroborate his complaint, both Kim and the managing director, Howard Morgan, concluded that Plaintiff's complaint was unsubstantiated. Kim Dep. 36:6-9; Liss Decl. Ex. 15 at 1-2.

On July 23, a coworker used the word "nigger" in a conversation with Plaintiff. Liss. Decl. Exs. 17, 18. Plaintiff encountered Susanne Bush, a service assurance agent, in the breakroom. Liss Decl. Ex. 17; Liss Decl. Ex. 8 ("Bush Dep."), at 24-25, ECF 33-8. While Plaintiff and Bush talked about political news that was on the TV, Bush asked Plaintiff something to the effect of "some people are so sensitive today, like how come you can call each other nigger, but I can't call you a nigger?"[3]  Liss Decl. Exs. 17 at 1-2, 18; Bush Decl. 27:12-16. Plaintiff emailed Kim to report what Bush said the next day. Liss Decl. Ex. 19; Kim Dep. 13:18-25-14:1-4.

Plaintiff did not report to his scheduled shift on Saturday, August 3. Pl. Dep. 100:4-12. On August 6, Plaintiff had a meeting with Ken Nelson, the operations manager, about Plaintiff's absence. Liss Decl. Ex. 22; Pl. Dep. 99:24-25-100:1-2. During the meeting, Plaintiff told Nelson about what Bush had said in the breakroom, and Nelson took Plaintiff to the senior manager, Jeff Hanssen. Liss Decl. Ex. 22. Plaintiff was asked to write a statement about his allegations, and

---

[3] Bush testified in her deposition that she did not recall using the word nigger and believed that she only said "the n-word."  Bush Decl. 27:24-25-28:1-3.

4 – OPINION & ORDER

Plaintiff wrote a two-page statement detailing his breakroom conversation with Bush. *Id.*; Pl. Dep. 135:9-11.

While writing the statement, Plaintiff experienced a mental breakdown. Pl. Dep. 103:7-11, 21:7. Plaintiff began to cry and told Hanssen that Plaintiff suffered from depression, had a firearm at home, and thought of self-harm in the past. Hanssen Dep. 21:7-17. Plaintiff then left the station, and Hanssen followed Plaintiff out of concern for his well-being. Hanssen Dep. 21:13-20. Hanssen and Plaintiff walked for a couple of a blocks and then went for a drive for approximately 30 to 45 minutes. Hanssen Dep. 21:21-25, 22:1-7,23:3-5; Pl. Dep. 101:2-10. Plaintiff remained extremely emotional while in the car, so Hanssen asked Nelson to call People Help for advice. Pl. Dep. 103:7-11. People Help advised Nelson to call local emergency mental health assistance, so Nelson called the Portland Police Department's Behavioral Health Unit to respond to the Portland station. Hanssen Dep. 23:11-14. When Hanssen and Plaintiff arrived back at the Portland station, the Behavioral Health Unit transported Plaintiff to Jefferson Legacy Hospital. Pl. Dep. 105:5-7. One week later, on August 13, Plaintiff was granted medical leave for mental health reasons. Pl. Dep. 143:6-11; Liss Decl. Ex. 20 at 2.

Hanssen subsequently provided Kim with Plaintiff's written statement, and Kim opened a second internal EEO investigation. Kim Dep. 23:15-18; Hanssen Dep. 37:18-24, 38:5-12. Kim interviewed Bush, who admitted to asking Plaintiff the question regarding the use of the word nigger in the breakroom. Kim Dep. 14:21-24, 17:20-23. On August 19, Kim sent Plaintiff a letter acknowledging receipt of his discrimination complaint, stating that he would be notified when the investigation was completed. Liss Decl. Ex. 24. On October 3, Morgan issued a final internal EEO report that substantiated Plaintiff's allegations against Bush based on her admission. Liss Decl. Ex. 18. As a result, Bush was issued a warning letter for inappropriate language in the

workplace. Liss Decl. Ex. 25; Kim Dep. 17:24-25-18:1-2. On October 8, Morgan sent Plaintiff a letter that the investigation had been completed. Liss Decl. Ex. 26.

On October 29, 2019, Plaintiff resigned from FedEx. Liss Decl. Ex. 27. Plaintiff's resignation email stated that he would not return to FedEx because his "doctor and counselor [didn't] think it would be healthy for [him] or [his] mental state." *Id.*

Nine months after he resigned, Plaintiff initiated this unlawful employment practices lawsuit against Defendant on August 5, 2020. Compl., ECF 1. Plaintiff asserts seven claims for relief: (1)-(2) discrimination claims under 42 U.S.C. § 1981 and O.R.S. 659A.030, alleging that Defendant constructively discharged Plaintiff based on his race; (3)-(4) hostile work environment claims under 42 U.S.C. § 1981 and O.R.S. 659A.030; (5)-(6) retaliation claims under 42 U.S.C. § 1981 and O.R.S. 659A.030, and (7) a whistleblower retaliation claim under O.R.S. 659A.199. Compl. ¶ 20-46.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28

(9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendant makes two main arguments in support of its Motion for Summary Judgment. First, Defendant argues that all Plaintiff's claims—which all arise out of Plaintiff's employment with Defendant—are governed and barred by the six-month limitations period set forth in the employment agreement. Def. Mot. Summ. J. 14-21, ECF 28. Second, Defendant asserts that even if Plaintiff's claims are not barred by the six-month limitations period, Plaintiff has failed to establish a prima facie case for discrimination, hostile work environment, and retaliation. *Id.* at 21-34.

In response, Plaintiff does not dispute the existence of the employment agreement or argue that his claims are not governed by the six-month limitations period; rather, Plaintiff responds that the employment agreement is unenforceable because it is unconscionable. Pl. Resp. Def. Mot. Summ. J. 21-30. Further, Plaintiff asserts that genuine issues of material fact exist

regarding Plaintiff's discrimination, hostile work environment, and retaliation claims. *Id.* at 30-41.

In sum, the Court finds that the six-month limitations provision is reasonable, governs Plaintiff's claims against Defendant, and is not unconscionable in violation of public policy. Therefore, because Plaintiff filed suit over six months after the date forming the basis for the cause of action, all Plaintiff's claims are time barred under the employment agreement.

I.      **Contractual Limitations on Filing Actions That Arise from Employment**

Parties can contractually agree to a limitations period shorter than the one provided under a statute of limitations, so long as the shorter limitations period is reasonable:

> [I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013) ("Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable."). The Oregon Supreme Court has recognized the same principle, noting that parties may "stipulate that an action for breach of an agreement must be brought within a certain period, and, if such limitation is reasonable, it will be upheld." *Ausplund v. Aetna Indemnity Co.*, 47 Or. 10, 22, 81 P. 577 (1905).

Courts have also enforced contractual limitations provisions in employment agreements for common law and statutory claims arising out of one's employment. The Ninth Circuit has enforced a six-month contractual limitations period to the filing of an employment law action, concluding that such a provision was not unconscionable under California law. *Soltani v. W. & S.*

*Life Ins. Co.*, 258 F.3d 1038, 1044-45 (9th Cir. 2001) (enforcing employment agreement that required employee to bring suit within six months of termination for the plaintiff's wrongful termination claims). The Oregon Court of Appeals has also held that an employment agreement's arbitration limitation provision was not unconscionable and was enforceable to a plaintiff's wage and hour claims, even though the agreement was a contract of adhesion that imposed a reduced statute of limitations. *Sprague v. Quality Rests. N.W., Inc.*, 213 Or. App. 521, 529, 162 P.3d 331 (2007).

Notably, in a decision from this district, *Fink v. Guardsmark, LLC*, a judge enforced a six-month limitations period in an employment contract to a plaintiff's civil rights claims against her former employer. No. CV 03-1480-BR, 2004 WL 1857114, *4 (D. Or. Aug. 19, 2004). As part of the hiring process, the plaintiff in *Fink* signed a four-page, single-spaced employment agreement. *Id.* at *1. The employment agreement provided that "any action by the employee against [the employer] arising from her employment must be brought within six months of the date the cause of action arises or it will be time-barred." *Id.* Subsequently, the plaintiff quit her job and filed an action for wrongful constructive discharge and violations of the Oregon and federal Family and Medical Leave Act over six months after the cause of action arose. *Id.* at *1, *6.

The court concluded that Oregon law did not prohibit the enforcement of a contractual provision that limits the filing of a statutory or common law employment action. *Id.* at *4. The employment agreement in that case limited "any action arising from [the] [p]laintiff's employment and [was] not restricted to actions for breach of the Agreement." *Id.* at *3. The court recognized that Oregon law allowed for contractual limitations on actions that arose from

9 – OPINION & ORDER

breach of the contract, *id.*, and that no Oregon authority suggested that the Oregon Supreme Court would decline to extend such reasoning to employment law claims, *id.* at *4.

Further, the court rejected the plaintiff's unconscionability argument against enforcing the six-month limitation. *Id.* The plaintiff argued that the employment agreement was unconscionable and, thus, unenforceable because the agreement was an adhesion contract that the plaintiff could not negotiate the terms of or opt out of. *Id.* at *5. The court rejected the plaintiff's argument, concluding that an adhesion contract is not considered unconscionable under Oregon law. *Id.* (citing *Derenco, Inc. v. Benj. Franklin Fed. Sav. & Loan Ass'n*, 281 Or. 533, 577 P.2d 477 (1978)). Further, the court concluded that the scope of the six-month limitations period was not substantively unconscionable. *Fink*, 2004 WL 1857114 at *5. Therefore, the court enforced the limitation provision and held that the plaintiff's action was barred because it was filed more than six months after the cause of action arose. *Id.* at *6.

Given the similarities between *Fink* and this case, the Court is inclined to follow the persuasive reasoning set forth in *Fink*. In this case, the latest event supporting Plaintiff's legal action was the date of his resignation on October 29, 2019. Plaintiff filed suit on August 5, 2020, approximately nine months later. Although Plaintiff argues that he does not remember acknowledging or reading the employment agreement, he does not dispute that he digitally acknowledged the employment agreement on April 29, 2019. Pl. Resp. Def. Mot. Summ. J. 19-20. Additionally, Plaintiff does not argue that his claims do not arise from his employment with Defendant. As such, it is undisputed that in accordance with the employment agreement, Plaintiff was required—but failed—to bring suit against Defendant within six months of the date giving rise to his claims. Thus, the Court concludes that the six-month limitations period governs Plaintiff's claims against Defendant.

**II.     Whether the Six-Month Limitations Period is Unconscionable**

Plaintiff argues, however, that the six-month limitations period is unreasonable because the limitation provision is unconscionable. A contract is unconscionable under Oregon law when the contract terms "are so one-sided as to be unconscionable *under circumstances existing at the time of the making of the contract*." *W.L. May Co. v. Philco-Ford Corp.*, 273 Or. 701, 707, 543 P.2d 283 (1975) (emphasis added). Contract terms are evaluated for both substantive and procedural unconscionability. *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555, 340 P.3d 27 (2014). Substantive unconscionability focuses on the terms of the contract, while procedural unconscionability focuses on whether the contract creates oppression and unfair surprise. *Gist v. ZoAn Mgmt.*, 305 Or. App. 708, 716, 473 P.3d 565, *rev. allowed*, 305 Or. 257, 475 P.3d 880 (2020). Although both forms of unconscionability are relevant, "only substantive unconscionability is absolutely necessary." *Sprague*, 213 Or. App. at 526.

   A.     Substantive Unconscionability

Plaintiff argues that the six-month limitations period is unreasonable and substantively unconscionable as void against public policy for three reasons: (1) the COVID-19 pandemic occurred during the six-month limitations period; (2) the employment agreement lacks mutuality; and (3) the six-month limitations period effectively deprives Plaintiff of a reasonable opportunity to vindicate his rights. Pl. Resp. Def. Mot. Summ. J. 21-30.

First, Plaintiff contends that the six-month limitations period is unreasonable due to the COVID-19 pandemic. *Id.* at 23. Plaintiff argues that—based on the date of his resignation—the six-month limitations period would have ended on April 29, 2020, which was when the State of Oregon was under a state of emergency due to the COVID-19 pandemic. *Id.* at 23-24; *see* Liss Decl. Ex. 28. Plaintiff contends that public policy, including House Bill (H.B.) 4212—which

11 – OPINION & ORDER

extends "time limitations for the commencement of a civil cause of action or giving notice of a civil claim established by statute" to 90 days after the state of emergency ends—demonstrates that it would be unreasonable to enforce the six-month limitations period. Pl. Resp. Def. Mot. Summ. J. 24; *see* H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020) (effective June 30, 2020).

Plaintiff's reliance on conditions that occurred after contract formation is misplaced: An unconscionability analysis focuses on the time when the contract was entered into. *See W.L. May Co. v. Philco–Ford Corp.*, 273 Or. 701, 707 (1975). Here, the employment agreement was entered into in April 2019, nearly a year before the COVID-19 pandemic began and over a year before H.B. 4212 became effective. Moreover, H.B. 4212 extends statute of limitations "established by statute," whereas the six-month time limitation here is established by contract.

Second, Plaintiff argues that the employment agreement lacks mutuality, because the limitations period requires only Plaintiff, and not Defendant, to bring claims within six months from the date forming the basis of the claim. Pl. Resp. Def. Mot. Summ. J. 25. Plaintiff relies on Ninth Circuit caselaw applying California law in support of his argument. *Id.*; *see Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1001 (9th Cir. 2010) (applying California law to hold that a time limitation in an agreement was unconscionable after reasoning that "a unilateral reduction in the statute of limitations is an indicator of substantive unconscionability"). Although the Court acknowledges that the limitations provision places a burden on Plaintiff that is not shared by Defendant, the Court is unpersuaded that this factor alone demonstrates that the provision is unconscionable. *See Sprague*, 213 Or. App. at 527 ("[A]lthough the shorter period can impose hardship on those who would bring claims, it also provides them with an incentive to do so while the disputed events are fresh in the memories of witnesses and parties.").

Third, Plaintiff asserts that the employment agreement is void as against public policy because it deprives him a reasonable opportunity to vindicate his rights. Pl. Resp. Def. M. Summ. J. 26-27. Plaintiff points to Senate Bill (S.B.) 726 § 6(b), which extended the statute of limitations for discrimination claims under O.R.S. § 659A.030 from one year to five years. *Id.* at 26; *see* S.B. 726 § 6(b), 80th Leg., Reg. Sess. (Or. 2019) (effective Sept. 29, 2019). However, Plaintiff's third argument also relies on events that occurred after Plaintiff acknowledged the employment agreement: S.B. 726 became effective on September 29, 2019, five months after Plaintiff acknowledged the employment agreement. Moreover, a judge in this district has already recognized that a six-month contractual limitations period is not unreasonable. *See Fink*, 2004 WL 1857114, at *5.

  B. Procedural Unconscionability

Finally, Plaintiff argues that the employment agreement is procedurally unconscionable because the employment agreement is an adhesion contract. Pl. Resp. Def. Mot. Summ. J. 28. The court in *Fink* rejected a similar argument, however, finding that under Oregon law, "an adhesion contract is not considered unconscionable. Such contracts are fully enforceable provided they are not ambiguous; in which case the ambiguous terms are construed against the drafter." *Fink*, 2004 WL 1857114, at *5.

Plaintiff asserts that this case is distinguishable from *Fink*. Plaintiff contends that he was unfairly surprised by the six-month limitation provision because he did not click the hyperlink to read the employment agreement before digitally acknowledging it. Pl. Resp. Mot. Summ. J. 29-30. Additionally, Plaintiff contends that the employment agreement was ambiguous, and thus oppressive, because the agreement contained thirteen paragraphs, did not contain headings, and three paragraphs—including the limitations provision—were in uppercase. *Id.* at 30.

13 – OPINION & ORDER

The Court does not find that the employment agreement was unfairly surprising or oppressive. The language in the agreement—and specifically the six-month limitation provision—plainly states that Plaintiff had only six months to assert a claim against Defendant from the date giving rise to the cause of action. Although Plaintiff may not have read the employment agreement before digitally acknowledging it, the employment agreement was provided to him; Defendant did not withhold the employment agreement from Plaintiff before requiring his digital acknowledgment. Plaintiff had the opportunity to click the hyperlink before digitally acknowledging the agreement. Thus, the Court rejects Plaintiff's argument that the employment agreement was unconscionable and unreasonable.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment [28]. This case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: October 23, 2021.


 *Marco Hernández*
 MARCO A. HERNÁNDEZ
 United States District Judge